IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ADVANCED NEUROMODULATION SYSTEMS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:04cv131 (Brown) |
| ADVANCED BIONICS CORPORATION, | § § § | |
| Defendant. | § | |

**PLAINTIFF ANS'S MOTION TO STRIKE DEFENDANT ADVANCED BIONICS'
CLAIM CONSTRUCTION EXPERT CHARLES DANIELS, PH.D.**

In this case, Advanced Neuromodulation Systems has asserted that Advanced Bionics infringes three patents, one of which is U.S. Patent No. 6,216,045 (the '045 Patent). The '045 Patent is directed to medical devices known as implantable neurostimulation leads. Advanced Bionics has designated Charles Daniels, Ph.D. as a claim construction expert to provide an "opinion regarding the meaning of certain terms in [the '045 Patent]." *See* Expert Report of Charles Daniels, Ph.D., attached as Exhibit A, at ¶ 12. While Dr. Daniels may be well qualified in his chosen field of polymer chemistry, he readily admits that he has absolutely no experience with implantable neurostimulation leads. As a result, he plainly is not qualified to serve as an expert with respect to the Court's decision on construction of the claims of the '045 Patent. ANS requests the Court to exclude Dr. Daniels' expert report and testimony.

Dr. Daniels has testified that he believes the '045 Patent covers the construction and function of a neurostimulation lead. Despite the fact that the bulk of his expert report deals with the materials used in constructing neurostimulation leads of the type claimed in the '045 Patent,

Dr. Daniels admitted that he has never participated in the construction of a neurostimulation lead nor considered what materials ought to be used in such a device. In fact, he has *never even seen* a neurostimulation lead. Dr. Daniels conceded that those who actually have expertise in the area of neurostimulation leads have knowledge superior to his with respect to the materials used in the construction of such leads. He also stated that such people may use certain terms in a way that is beyond his knowledge, skill and experience. Based on his own testimony, Dr. Daniels is not qualified to render expert opinions with respect to the construction of the claims of the '045 Patent.

1. **The Federal Circuit has identified the appropriate characteristics of a claim construction expert.**

Advanced Bionics designated Dr. Daniels as an expert with respect to construing the terms used in the claims of the '045 Patent. To properly assist the Court in the event the Court takes into account extrinsic evidence in construing the claims of the '045 Patent, any expert report should provide viewpoints from someone skilled in the field to which the patent is directed. As the Federal Circuit has explained, "expert evidence may assist the trial judge in understanding the invention as viewed by persons in the technologic field." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1355-56 (Fed. Cir. 2001) (citing *Pitney-Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999)).

Dr. Daniels agreed with that standard in his report, wherein he stated that he understands the "claims should be construed from the perspective of a person of ordinary skill in the field to which the patent relates." *See* Daniels' Expert Report, attached as Exhibit A, at ¶ 13. Dr. Daniels' testimony, however, revealed that he is not equipped to satisfy the standard the Federal Circuit has articulated, because he simply is not a "person[] in the technologic field."

2.   **Dr. Daniels has no experience within the field of the '045 Patent.**

Dr. Daniels admitted that he has no experience, knowledge or skill that would support his opinions with respect to the claim terms contained in the '045 Patent. During his deposition, Dr. Daniels was asked to identify the field of the '045 Patent. He testified that the field of the '045 Patent is "[t]he construction of and the function of a neurostimulator lead." *See* Deposition of Charles Daniels at p. 39:22 - 40:1 (excerpts of the ASCII transcript of Dr. Daniels's deposition are attached hereto as Exhibit B). Dr. Daniels went on to concede that he has no experience in that field. He admitted that he has never participated in the construction of a neurostimulator lead, considered what materials might be appropriate for use in a neurostimulator lead and never investigated what materials had been used successfully in the past in neurostimulation devices. He testified:

> Q    You have never constructed a neurostimulator lead, have you?
>
> A    No.
>
> Q    You have never participated in the construction of a neurostimulator lead, have you?
>
> A    That's correct.
>
> * * *
>
> Q    So prior to the time that you were hired in this case, you had never had the opportunity or the occasion to consider what materials might be appropriate for a

>   neurostimulator lead?
>
> A   That's correct.
>
>                               * * *
>
> Q   Did you consult any resources to determine what materials had successfully been used in the past in neurostimulator devices?
>
> A   No.

*See* Excerpts of Daniels Dep., attached as Exhibit B, at p. 40:2-40:8, 20:7 - 20:12, 26:7 - 26:11.

Even based on his own definition of the field of the '045 Patent, Dr. Daniels has never participated in or investigated the field to which the patent is directed. Indeed, Dr. Daniels testified that he had *never even seen* a neurostimulator lead.

> Q   Have you ever seen one of these?
>
> A   Not up close.
>
> Q   Have you ever seen one far away?
>
> A   It would be harder to see far away than up close, wouldn't it, given the dimensions.
>
>     No, I have not actually observed a neurostimulator lead.

*See id.* at p. 59:25 - 60:6.

One needs to look no further than Dr. Daniels own testimony to see that he does not possess the requisite knowledge, skill or experience needed to interpret the claims of the '045

Patent. Simply put, his base of knowledge is insufficient to render any opinion that would be useful in interpreting the claims of the '045 Patent.

### 3. Dr. Daniels is not the type of individual that would have knowledge of the materials used in neurostimulation leads.

Dr. Daniels' report sets forth his opinions regarding what types of materials are called for by the claims of the '045 Patent. Yet his own testimony established that individuals who are actually skilled in the field of neurostimulation leads would be far better positioned than him to provide opinions regarding the materials used in such leads. Dr. Daniels testified:

> Q  Did you consult any resources to determine what materials had successfully been used in the past in neurostimulator devices?
>
> A  No.
>
> Q  Would you agree with me that there surely must be people out there who have some experience with these specific kinds of materials and would likely know what kinds of materials had been used successfully in the past in these applications?
>
> A  May I restate your question?
>
> Q  Sure.
>
> A  You're asking me, are there people in the world of neurostimulator leads that exist that would know what materials are being used

> in this application?
>
> Q    Yes.
>
> A    Certainly.
>
> Q    But you're not one of those people?
>
> MS. SKLENAR:  Objection. Form.
>
> A    I am not one of those people, have not developed a neurostimulator lead.

*See* Excerpts of Daniels Dep., attached as Exhibit B, at p. 26:7 - 27:8. Dr. Daniels' admitted lack of experience in the field of neurostimulation leads was further revealed when he was unable to answer "whether someone skilled in the art of implantable stimulation leads would require more information to understand [the term] 'consistent with.'" *See id.* at p. 43:22 - 44:5. Necessarily, if Mr. Daniels was skilled in the relevant field, he would have been able to answer that question.

Dr. Daniels' inexperience and lack of knowledge in the field of neurostimulation leads directly impacts the report he offered in this case. On several occasions in his report, Dr. Daniels purports to address the construction or meaning of the term "substantially," as used in the '045 Patent. *See id.* at p. 54:12 - 54:15. But in his deposition, he explained that those who actually are skilled in the art of implantable medical devices may use the term "substantial" in a way that is beyond his knowledge, skill and experience.

> Q    Would you agree with me, would you not,
>
> that it's possible that those skilled in the
>
> art of implantable medical devices might

        attach a meaning to "substantially" of which you are unaware?

A    Anything is possible.

Q    You need to answer that question yes or no.

A    Yes, it is possible.

*See id.* at p. 71:23 - 72:6.

Dr. Daniels' testimony revealed that he does not consider himself to be skilled in the field of implantable medical devices, or neurostimulation leads in particular -- the very field he identified as the field of the '045 Patent. Dr. Daniels could not identify the materials that are used in the construction of such leads, but he admitted that people actually skilled in the field would be able to. Likewise, Dr. Daniels was unable to identify the additional information that a person skilled in the field would need to interpret terms like "consistent with" or "substantial." If he was qualified to offer an opinion with respect to the claims of the '045 Patent, he would have had answers to those questions. Last, Dr. Daniels admitted that people who actually have knowledge, skill and experience in the field of neurostimulation leads may use terms in ways with which he is unfamiliar.

**Plaintiff ANS's Motion to Strike Defendant Advanced Bionics'**  
**Claim Construction Expert Charles Daniels, Ph.D.**  
DAL01:838231.4

Page - 7

## CONCLUSION

Dr. Daniels' testimony revealed that his knowledge, skill and experience do not in any way overlap with the field of the '045 Patent. According to him, the '045 Patent is directed to the construction and function of neurostimulator leads. Yet he admitted he has never constructed, investigated or *even seen* one of these leads. In fact, many times in his testimony, Dr. Daniels admitted that he would not consider himself among the group of people skilled in that field. As a result, he is not qualified to serve as a claim construction expert, and neither Dr. Daniels' report nor his testimony should be considered in connection with interpreting the claims of the '045 Patent.

Dated: February 7, 2005.

_____
Bryant C. Boren, Jr.
Attorney-in-Charge
State Bar No. 02664100
bryant.c.boren@bakerbotts.com

Timothy S. Durst
State Bar No. 00786924
tim.durst@bakerbotts.com

Christopher W. Kennerly
State Bar No. 00795077
chris.kennerly@bakerbotts.com

**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6500 (Telephone)
(214) 953-6503 (Telecopier)


Clyde B. Siebman
State Bar No. 18341600

Lawrence A. Phillips
State Bar No. 15937755

**SIEBMAN, BURG, REYNOLDS, & PHILLIPS**
Federal Courthouse Square
300 N. Travis
Sherman, TX 75090
(903) 870-0070 (Telephone)
(903) 870-0066 (Facsimile)

**ATTORNEYS FOR PLAINTIFF ADVANCED NEUROMODULATION SYSTEMS, INC.**

Plaintiff ANS's Motion to Strike Defendant Advanced Bionics' Claim Construction Expert Charles Daniels, Ph.D.
DAL01:838231.4

Page - 9

## CERTIFICATE OF CONFERENCE

This is to certify that Matt Wolf, counsel for Advanced Bionics, and I have conferred in good faith regarding objections to the qualifications of the proposed experts, including Dr. Daniels, and are not in agreement regarding the subject of the motion. This motion will be opposed.

_____
Christopher W. Kennerly

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff ANS's Motion to Strike Defendant Advanced Bionics' Claim Construction Expert Charles Daniels Ph.D. (with exhibits) was served to Matthew M. Wolf and Frank Finn by electronic mail on February 7, 2005, and by first-class U.S. mail on February 8, 2005.

_____
Attorney for Plaintiff